IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, GALLATIN WILDLIFE ASSOCIATION, YELLOWSTONE BUFFALO FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. SHEEP EXPERIMENT STATION; AGRICULTURAL RESEARCH SERVICE,<br><br>Defendants. | CV 17–155–M–DLC<br><br>ORDER |

Plaintiffs have filed a Motion for a Preliminary Injunction (Doc. 4) requesting the Court to enjoin Defendants from entering a final Record of Decision ("ROD") and to allow Plaintiffs members to recreate on the subject property. On April 23, 2018, this Court held a hearing on Plaintiffs' Motion. For the reasons stated below, Plaintiffs' Motion will be denied.

## BACKGROUND

This is Plaintiffs third lawsuit challenging the grazing of domestic sheep by Defendants in southwest Montana's Centennial Mountains. The U.S. Agricultural

-1-

Research Service and Sheep Experiment Station ("Sheep Station") at issue was established in 1915 and is managed by the Agricultural Research Service. Sheep have been historically grazed on three allotments in the Centennial Mountains: the Summer West, Summer East, and the U.S. Forest Service Meyers Creek allotments. These allotments span approximately 16,600 acres and are dissected by roughly 16 miles of the Continental Divide Trail ("CDT"). While the public is allowed access to that portion of the CDT crossing Sheep Station lands and a small transection of lands abutting the CDT, use of the remaining 16,600 acres is strictly limited in order to "maintain the Living Laboratories status" of the Sheep Station's "high elevation rangelands." (Doc. 8 at 13.) Accordingly, the public is not allowed access to Sheep Station lands year-round.

Defendants have been unable to graze any sheep over the last several years because of Plaintiffs' continued litigation. In 2012, Plaintiffs filed a lawsuit challenging the 2011 Biological Opinion for the Sheep Station resulting in the preparation of a new Biological Opinion. *See Cottonwood Envtl. Law Ctr. v. U.S. Sheep Experiment Station*, No. CV 12–45–M–DLC, Doc. 1 (D. Mont. Mar. 26, 2012). In 2014, Plaintiffs filed another lawsuit challenging the new Biological Opinion as well as the Sheep Station's National Environmental Policy Act ("NEPA") analysis. *See Cottonwood Envtl. Law Ctr. v. U.S. Sheep Experiment*

*Station*, No. CV 14–192–M–DLC, Doc. 1 (D. Mont. June 23, 2014). Plaintiffs second suit was voluntarily dismissed after Defendants stated that no sheep would be grazed on Sheep Station lands "until after the completion of ongoing environmental analysis under [NEPA.]" (Doc. 4-12 at 3–4.) After Defendants had completed their environmental analysis as promised and issued an Environmental Impact Statement ("EIS"), Plaintiffs filed the present suit alleging that the EIS had violated NEPA. (*See* Doc. 1.)

For grizzly bears, the Centennial Mountain Range "is the best linkage habitat between Yellowstone and central Idaho." (Doc. 4-13 at 3.) The U.S. Fish and Wildlife Service's 2014 Biological Opinion estimates that 22 grizzly bears occupy the Centennial Mountain Range. (Doc. 4-4 at 26.) Through a Freedom of Information Act request, Plaintiffs have obtained internal emails which, Plaintiffs contend, establish that "grizzly bears have defended sheep carcasses and chased sheepherders on . . . at least two separate occasions." (Doc. 5 at 6 (citing Doc. 4-5).) Nonetheless, the EIS states that "herders have not encountered grizzly bears on [Sheep Station] lands." (Doc. 4-2 at 12.) Plaintiffs argue that this evidence and other evidence establishes human-grizzly bear conflict, Plaintiffs contend that the EIS is inadequate and stands in contrast to the evidence of grizzly bear conflict before the agency in violation of NEPA. Further, Plaintiffs assert that the grizzly

bear "conflicts put the lives of sheepherders, hikers on the [CDT], and grizzly bears at risk." (Doc. 5 at 6.)

Plaintiffs contend that a supplemental Environmental Impact Statement ("SEIS") is necessary in this case because the Final Environmental Impact Statement ("FEIS") issued by Defendants in 2017 "'entirely failed to consider an important aspect of the problem'" or "'offer[ ] an explanation for [the] decision that runs counter to the evidence before the agency,'" namely the conflict between humans and grizzly bears. (Doc. 5 at 13 (quoting *Friends of Clearwater v. McAllister*, 214 F. Supp. 2d 1083, 1087 (D. Mont. 2002) (internal citation omitted).) Plaintiffs' Motion seeks a preliminary injunction enjoining Defendants from issuing a ROD before completing a SEIS thoroughly analyzing the evidence of conflict between humans and grizzly bears in the Centennial Mountains and providing an opportunity for public comment which would inform the public of the risks of hiking on the CDT. Additionally, Plaintiffs seek affirmative injunctive relief allowing the public to enjoy non-motorized recreation on Sheep Station lands while Defendants prepare the requested SEIS.

## DISCUSSION

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res.*

*Def. Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit permits a preliminary injunction where a plaintiff shows "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court first analyzes whether Plaintiffs "are likely to succeed on the merits of any of their claims under prong one of *Winter* [*v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)]. Upon determining that they are, we then proceed to consider the remaining prongs of the *Winter* test." *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014).

The merits of Plaintiffs' claims are governed by NEPA. (Doc. 5 at 9–11.) However, because NEPA does not "provide[ ] a private right of action for violations of its provisions," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), Plaintiffs can obtain judicial review of the alleged violations of NEPA only under the waiver of sovereign immunity contained within the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. *Earth Island Inst. v. U.S. Forest*

*Serv.*, 351 F.3d 1291, 1300 (9th Cir. 2003). "[O]nly 'agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court' are subject to judicial review." *Tucscon Airport Auth. v. Gen Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (quoting 5 U.S.C. § 704).

Plaintiffs contend that the APA permits the Court to "issue an order that compels Defendants to supplement the FEIS before issuing a ROD." (Doc. 9 at 5.) Quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000), Plaintiffs assert that "an action to compel an agency to prepare an [*sic*] SEIS . . . is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(a), to compel agency action unlawfully withheld or unreasonably delayed." (Docs. 5 at 11; 9 at 5.)

Defendants respond that Plaintiffs have not disputed that the FEIS has not been approved by the agency and that, under NEPA, the FEIS will not be considered "final agency action" for purposes of the APA until a ROD is issued. (Doc. 7 at 11–12.) Consequently, Plaintiffs cannot seek review of a "final agency action" under either § 704 or § 706(2). Importantly, Defendants contend that Plaintiffs cannot satisfy their burden of establishing "failure to act" for purposes of seeking review under § 706(1). (*Id.* at 12.) The Court agrees.

"Once an EIS's analysis has been solidified in a ROD, an agency has taken final action" for purposes of the APA. *Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1118 (9th Cir. 2011). Again, § 704 limits this Court's ability to review only "agency action made reviewable by statute and final agency action." Plaintiffs cannot direct this Court to a statute which makes their request reviewable and, because a ROD has not yet issued, there has not yet been "final agency action" permitting review. Consequently, neither § 704 nor § 706(2) permit this Court to conduct the review requested by Plaintiffs.

Plaintiffs' argument that § 706(1) permits this Court to "compel agency action unlawfully withheld" in this situation is unavailing. Plaintiffs cannot direct this Court to any case compelling the completion of a SEIS prior to the issuance of a ROD. To compel agency action under § 706(1), Plaintiffs bear the burden of establishing that the action they seek is mandatory, discrete, ministerial, and "so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62–63 (2004)). The Supreme Court has clarified that a claim under § 706(1) "can proceed only where . . . an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64. In support of this burden, Plaintiffs

assert that 40 C.F.R. § 1502.9(c)(1)(ii) requires the agency to "prepare supplements" if "there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." However, this argument presupposes that Defendants will approve the proposed action in a ROD and, more importantly, that Defendants will have done so having "unlawfully withheld" a SEIS.[1] Without a ROD, Plaintiffs cannot establish that Defendants "failed to take a discrete agency action that [they are] required to take." *Norton*, 542 U.S. at 64.

Plaintiffs rely solely upon *Dombeck* for the proposition that this Court may compel this agency action before final agency action has been rendered. However, that was not the case in *Dombeck*, where appellants requested the Ninth Circuit to enjoin the Forest Service from proceeding with timber sales that had been approved by a "final Record of Decision" until a SEIS had been completed. 222 F.3d at 554–555. The question of whether the Court could compel an SEIS prior to a final agency action was not before the Ninth Circuit in *Dombeck* because a ROD had already been issued. Further, Plaintiffs argument is insupportable in view of the doctrine of prudential ripeness.

---

[1] This statement is in no way intended to indicate whether a SEIS is actually required in this case.

"The ripeness doctrine is drawn both from Article III limitations on judicial power[2] and from prudential reasons for refusing to exercise jurisdiction." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal quotation marks and citation omitted). The "basic rationale" of the prudential ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The Ninth Circuit uses two factors to determine whether a controversy is ripe for judicial review: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996).

It has been long established that a "claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Standard Alaska Production Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989) (citing *Friedman Brothers Investment Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir. 1982); *accord Dietary Supplemental Coalition, Inc. v.*

---

[2] For ease of discussion and to promote judicial economy, the Court assumes without deciding that Plaintiffs have Article III standing.

*Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992); *accord Verizon California Inc. v. Peevey*, 413 F.3d 1069, 1075 (9th Cir. 2005) (Bea, J., concurring). "Finality must be interpreted in a pragmatic and flexible manner to ensure that judicial review does not interfere with the agency's decision-making process." *Acura*, 90 F.3d at 1408.

Here, as discussed above, there is no final agency action. Further, there is no flexible interpretation of "final agency action" which could ensure that "judicial review does not interfere with the agency's decision-making process" in this instance because Plaintiffs' request *is* that the court interfere with Defendants' decision making process—the injunctive relief sought by Plaintiffs is that the Court enjoin the issuance of a ROD until the completion of a SEIS. A request which, as stated above, presupposes that Defendants will approve sheep grazing in a ROD without completing a SEIS.[3] "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted).

---

[3] Again, it is not the intention of the Court to make any statement which could be regarded as suggesting that a SEIS is required in this case. This is a determination the Defendants need to make.

To establish hardship, Plaintiffs "must show that withholding judicial review would result in direct and immediate hardship and would entail more than possible financial loss." *Sullivan*, 978 F.2d at 564. The Court cannot foresee hardship to Plaintiffs by the withholding of judicial review. Any hardship alleged by Plaintiffs will not occur until Defendants have rendered a ROD which approves high-elevation sheep grazing without the completion of a SEIS.

In light of the above, the Court is convinced that § 706(1) does not permit the Court to compel Defendants to complete a SEIS before issuing a ROD at this juncture. Consequently, Plaintiffs' claims are barred by the APA. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for a Preliminary Injunction (Doc. 4) is DENIED.

DATED this 4th day of May, 2018.

Dana L. Christensen, Chief Judge
United States District Court