IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
MAY 30 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, GALLATIN WILDLIFE ASSOCIATION, YELLOWSTONE BUFFALO FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. SHEEP EXPERIMENT STATION; AGRICULTURAL RESEARCH SERVICE,<br><br>Defendants. | CV 17–155–M–DLC<br><br>ORDER |

Before the Court is the Plaintiffs' Second Motion for Preliminary Injunction (Doc. 21). At the Parties' joint request, the Court will resolve this Motion on the merits as being a motion for permanent injunction and summary judgment. For the reasons stated below, Plaintiffs' Motion will be denied.

## BACKGROUND

This is Plaintiffs third lawsuit challenging the grazing of domestic sheep by Defendants in southwest Montana's Centennial Mountains. The U.S. Agricultural Research Service and Sheep Experiment Station ("Sheep Station") at issue was

-1-

established in 1915 and is managed by the Agricultural Research Service. Sheep have been historically grazed on three allotments in the Centennial Mountains: the Summer West, Summer East, and the U.S. Forest Service Meyers Creek allotments. These allotments span approximately 16,600 acres and are dissected by roughly 16 miles of the Continental Divide Trail ("CDT"). While the public is allowed access to that portion of the CDT crossing Sheep Station lands and a small transection of lands abutting the CDT, use of the remaining 16,600 acres is strictly limited in order to "maintain the Living Laboratories status" of the Sheep Station's "high elevation rangelands." (Doc. 8 at 13.) Accordingly, the public is not allowed access to Sheep Station lands year-round.

Defendants have been unable to graze any sheep over the last several years because of Plaintiffs' continued litigation. In 2012, Plaintiffs filed a lawsuit challenging the 2011 Biological Opinion for the Sheep Station resulting in the preparation of a new Biological Opinion. *See Cottonwood Envtl. Law Ctr. v. U.S. Sheep Experiment Station*, No. CV 12–45–M–DLC, Doc. 1 (D. Mont. Mar. 26, 2012). In 2014, Plaintiffs filed another lawsuit challenging the new Biological Opinion as well as the Sheep Station's National Environmental Policy Act ("NEPA") analysis. *See Cottonwood Envtl. Law Ctr. v. U.S. Sheep Experiment Station*, No. CV 14–192–M–DLC, Doc. 1 (D. Mont. June 23, 2014). Plaintiffs

second suit was voluntarily dismissed after Defendants stated that no sheep would be grazed on Sheep Station lands "until after the completion of ongoing environmental analysis under [NEPA.]" (Doc. 4-12 at 3–4.) After Defendants had completed their environmental analysis as promised and issued an Environmental Impact Statement ("EIS"), Plaintiffs filed the present suit alleging that the Defendants violated NEPA by failing to prepare a supplemental EIS. (*See* Doc. 1.)

In March 2018, Plaintiffs moved for a preliminary injunction requiring Defendants to supplement the EIS before grazing any sheep on Sheep Station lands. This Court denied Plaintiffs' motion on the basis that there was no final agency action subject to judicial review in the absence of a Record of Decision ("ROD") authorizing the grazing of sheep on Sheep Station lands. (Doc. 11 at 7–11.) The Ninth Circuit affirmed this Court's decision. (Docs. 16 at 2–3; 27 at 1.)

In July 2018, Defendants issued a ROD authorizing the grazing of sheep on Sheep Station lands. (Docs. 20 at 3; 23 at 3.) Thereafter, Plaintiffs amended their complaint to challenge the ROD and filed the Motion presently before the Court seeking a preliminary injunction of sheep grazing until Defendants complete a supplemental EIS ("SEIS"). The Court granted the Parties' Joint Motion to Convert the Preliminary Injunction to Summary Judgment and heard argument on this matter on May 8, 2019. (Doc. 30 at 1.)

Through a Freedom of Information Act request, Plaintiffs have obtained internal emails which, Plaintiffs contend, establish that "grizzly bears have chased sheepherders to protect sheep carcasses." (Doc. 20 at 16.) Additionally, Plaintiffs claim they have evidence that the "mysterious[ ] disappear[ance]" of a grizzly bear in 2012 was a likely mortality caused by a confrontation between the grizzly and sheepherders. (Doc. 22 at 8.) Plaintiffs assert that this evidence shows an increased likelihood that dangerous grizzly bear-human conflicts will occur as a result of grazing sheep on Sheep Station land.

Plaintiffs rely upon evidence of entries in a date book that were later transcribed by Animal and Plant Health Inspection Service ("APHIS") officer Jonathan Farr in internal emails regarding grizzly bear encounters on Sheep Station lands. Plaintiffs draw attention to two entries from 2008:

> July 28—Big Mountain pasture in West Summer Range. [Sheep Station] personnel chased by grizzly bear. Investigation by APHIS found evidence of grizzly activity in the vicinity, but also found black bear sign as well.
> August 1—Big Mountain pasture, West Summer Range. Herder chased by bear again. 1 ewe killed possibly by black bear.

(Doc. 4-5 at 7.) As regards the mysterious disappearance of a grizzly bear in 2012, Plaintiffs rely upon a report titled "Down Collar Retrieval Information." (Doc. 4-9 at 2.) The report describes an investigation into the suspicious circumstances

under which a grizzly bear monitoring collar was found underneath a rock in a small stream near a hunting camp. Because the bear itself was never found, it is a presumed mortality. The report indicates that a rifle cartridge was found approximately 300 yards from where the grizzly "was last located alive." (*Id.* at 6.) The report further indicates that the rifle cartridge was found on a high point where it appeared that a sheep herder had tended a flock of sheep. Additionally, the report details an encounter between the investigators and two hunters who were camped near the downed collar. The hunters became visibly nervous when the collar was discussed and one of the first things they mentioned regarding the collar was that because it was in the water, there would be no fingerprints on it. However, the report is ultimately inconclusive as to the underlying cause for the presumed mortality. (*Id.* at 2–8.)

Plaintiffs contend that Defendants' failure to address these encounters in the FEIS runs afoul of NEPA and invalidates both the FEIS and ROD in this case. (Docs. 20 at 16–17; 22 at 13.) Plaintiffs request the Court vacate the ROD and enjoin sheep grazing until such time as Defendants have complied with NEPA by issuing a SEIS discussing the implications of increased grizzly bear encounters resulting from Sheep Station activities. (Doc. 20 at 17–18.)

## LEGAL STANDARDS

### I. Summary Judgment

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

### II. Administrative Procedures Act

Judicial review of agency decision under NEPA is governed by the Administrative Procedures Act ("APA"). *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). Under the APA "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a particular statute, is entitled to judicial review thereof." 5 U.S.C. § 702. An agency action may be set aside under the APA only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "The standard is

deferential." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010.)

## DISCUSSION

Plaintiffs advance two claims under NEPA: first, Defendants failed to prepare a SEIS and, second, the ROD authorizing the grazing of sheep on Sheep Station lands is arbitrary and capricious. (Doc. 20 at 15–17.) Plaintiffs' claims hinge entirely upon their assertion that Defendants failed to analyze or disclose that grizzly bears chased Sheep Station personnel. Plaintiffs assert that this oversight is fatal because it deprived the public of information implicating the potential for both human and grizzly bear fatalities stemming from an increased likelihood of confrontation between the species as a result of grazing sheep in grizzly bear country. In the absence of supplementation, Plaintiffs argue that the FEIS is inadequate because it does not provide the public with essential information. Moreover, Plaintiffs claim that the ROD is arbitrary and capricious because it relies on an FEIS lacking essential information. Plaintiffs' first claim is properly classified as an action to compel agency action under 5 U.S.C. § 706(1) while the second claim should be classified as pursuing relief under § 706(2) because it seeks declaratory relief finding the ROD to be arbitrary and capricious.

I. Section 706(1) Claim

An action seeking to compel an agency to prepare a SEIS is "not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (internal quotation marks and citation omitted). In order to prevail, Plaintiffs must show that Defendant have refused to prepare a SEIS despite a clear legal duty to do so. *See ONRC Action v. Bureau of Land Management*, 150 F.3d 1132, 1137–38 (9th Cir. 1998). As has been noted by the Supreme Court, the Council on Environmental Quality ("CEQ") regulations "impose a duty on all federal agencies to prepare supplements to either draft or final EIS's" in certain situations. *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 372 (1989). These situations, according to the CEQ regulations arise when:

> (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or
> (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c)(1).

Plaintiffs attempt to portray the information they obtained as "new information" warranting supplementation under § 1502.9(c)(1)(ii). (Doc. 26 at

11.) Plaintiffs quote *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 557–58 (9th Cir. 2000), for the proposition that Defendants must supplement when "new information is sufficient to show that the remaining [agency] action will affect the quality of the human environment in a significant manner or to a significant extent not already considered." Plaintiffs contend that their "new information" shows that grazing sheep in the Centennial Mountains will affect the quality of the human environment in a significant manner by increasing the likelihood of human-grizzly bear conflict and implicating the lives of members of both species. (Doc. 26 at 12–13.) Plaintiffs assert that this probability, as evidenced by the "new information," is significant and has not yet been considered. (*Id.* at 12–13.)

The problem with Plaintiffs' argument for supplementation is that the information is not "new." Temporally, the documents Plaintiffs rely upon to establish that grizzly bears have chased sheepherders refer to encounters on July 28, 2008 and August 1, 2008. (Doc. 4-5.) And Plaintiffs' evidence purportedly showing that the Sheep Station could be responsible for another grizzly bear's "mysterious[ ] disappear[ance]" dates from September 18, 2012. (Doc. 4-9.) This evidence predates Defendants' Biological Opinion dated February 25, 2015, Defendants' FEIS dated July 2017, and Defendants' Supplemental Information Report ("SIR") dated July 23, 2018. (Docs. 7-1; 7-2; 25-2.)

Aside from not being temporally "new," the evidence is not factually "new." The 2008 and 2012 evidence was considered by Defendants when analyzing the potential effects on grizzly bears of grazing sheep on Sheep Station lands. Defendants' discussion of the evidence is found in the 2015 Biological Opinion (Doc. 7-1 at 29–31), in the 2017 FEIS (Doc. 7-2 at 123, 130, 409), and in the 2018 SIR (Doc. 25-2 at 2–3).

The 2015 Biological Opinion includes a discussion of all grizzly bear reports on Sheep Station lands within the preceding ten years. The Biological Opinion begins that discussion with the following definitions:

> [A] grizzly bear/sheep conflict is defined as any circumstance in which sheep are killed by a grizzly bear. Grizzly bear/sheep encounters are defined as situations when a grizzly bear is in the vicinity of sheep, but does not kill any sheep. Grizzly bear/human encounters encompass any interaction between a grizzly bear and a human, including sightings to altercations that result in the death or injury of either the bear or the human. Due to the expected proximity of Sheep Station personnel to sheep grazing on [Sheep Station lands], a grizzly bear/human encounter has the potential to also be considered as a grizzly bear/sheep encounter.

(Doc. 7-1 at 30.) The Biological Opinion then provides the following description of the incident:

> On July 28, 2008, Sheep Station employees reported encountering a grizzly bear in the Big Mountain pasture of the West Summer Range, however APHIS Wildlife Services found both grizzly bear and black bear in the vicinity. On August 1, 2008, in the Big Mountain pasture,

> a Sheep Station employee encountered a bear (reports do not identify if the bear was a black or grizzly bear) where one ewe had been killed; it is unknown if it was killed by a grizzly or black bear. In both of the reported bear/human encounters, descriptions of bear were representative of natural bear behaviors and do not demonstrate a loss of wariness to humans.

(*Id.* at 31.) The Biological Opinion also provides the following account of the 2012 grizzly bear disappearance:

> In 2012, a grizzly bear collar was found in the action area. The bear associated with the collar has not been found, and it is unknown if the bear was killed or not; in the absence of better data, the [Interagency Grizzly Bear Study Team] documents that bear as a probable mortality. The Service's Division of Law Enforcement has an ongoing open investigation into the circumstances surrounding the bear collar; no conclusions have been reached in that case. At this time, no conclusions have been made that connect the bear collar to actions by the Sheep Station or its employees. Should the investigation conclude otherwise, reinitiation of this consultation may be necessary, separate from any enforcement actions that may be taken.

(*Id.* at 30 (internal quotation marks and citation omitted).)

The FEIS summarizes the evidence in much the same manner and also incorporates the Biological Opinion by reference pursuant to 40 C.F.R. § 1502.21. (Doc. 7-1 at 122–23, 130.) The FEIS further provides a response to a public comment (which Plaintiffs claim to have filed) specifically stating that the draft EIS did not disclose "the fact that grizzly bears have previously chased herders" and "failed to analyze the fact that grizzly bears that are chasing sheep herders may

-11-

actually kill the herders." (*Id.* at 409.) The response to this comment was that a "herder may shoot directly at a grizzly bear only if his personal safety is threatened, however this situation has not occurred with Sheep Station grazing, and is not expect to occur." (*Id.*)

The Court does not find the FEIS's discussion of the incidents to be lacking. Nor does the Court find the omission of the word "chase" from the various descriptions of the incidents to be significant. Defendants assert that the FEIS, Biological Opinion, and SIR "all reasonably concluded the information was unconfirmed, insignificant, and did not warrant a supplemental EIS." (Doc. 24 at 16–17.) The Court agrees.

The documentation of the July 28, 2008 encounter shows that APHIS was not convinced that a grizzly bear was involved and nowhere mentions that a sheep carcass was involved. The documentation of the August 1, 2008 encounter does not even mention a grizzly bear, instead only providing "1 ewe killed possibly by black bear." (Doc. 4-5 at 7.) The documentation surrounding the 2012 probable mortality is even less compelling. It provides three possible scenarios, one of which implies that a Sheep Station employee shot the missing grizzly bear while tending a flock and then placed the collar in the stream next to the well-known camping spot. However, the report is inconclusive and explicitly states that it "is

unknown if the cartridge has any relationship to [the missing bear] at all." (Doc. 4-9 at 7.)

The events are described as "encounters" because that is what the events were according to the definitions used in the 2015 Biological Opinion. (Doc. 7-1 at 31.) Detail is omitted from the FEIS and the Biological Opinion because detail is unquestionably lacking from the evidence Plaintiffs want to have analyzed. As just stated, it was not determined that either incident in 2008 involved a grizzly bear. On the other hand, it was determined that the descriptions of the incidents "were representative of natural bear behaviors and do not demonstrate a loss of wariness to humans." (*Id.*)

The Court acknowledges that inclusion of the word "chase" could possibly have elicited more public concern over the welfare of sheep herders or grizzly bears. However, this does not change the fact that the encounters were disclosed and discussed in the Biological Opinion and FEIS to the extent the evidence permitted. Moreover, in the event of an encounter, the Sheep Station has protocol which authorizes a herder to fire at a grizzly bear only if the "herder's personal safety is threatened." (Doc. 7-1 at 36.) And "Sheep Station's herders also carry bear spray, a commonly used (and encouraged) deterrent that does not harm bears." (*Id.*) Looking at Plaintiffs' evidence, and additional evidence of

-13-

encounters in 2007, the Biological Opinion states that the likelihood of a herder needing to shoot at a bear "is expected to be discountable, based on the fact that it historically has not occurred during grazing comparable to that proposed." (*Id.*) Accordingly, the Biological Opinion determined that grizzly bears would not be "subject to an increased likelihood of death or injury." (*Id.*)

Based on the foregoing, the Court cannot conclude that Defendants are under any legal duty to prepare a SEIS addressing Plaintiffs' evidence because the evidence is not new and does not present considerations that have not already been analyzed in the relevant NEPA documents. Accordingly, Plaintiffs have failed to show that they are entitled to judgment as a matter of law on their first claim for relief.

## II. Section 706(2) Claim

An agency action may be set aside under the APA only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This Court's review under the "arbitrary and capricious standard" is limited. *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010). The Court may not substitute its judgment for that of the agency. An agency's decision is arbitrary and capricious "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important

aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (internal quotation marks and citation omitted). "Agency action is valid if the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Id.* (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008)).

Plaintiffs' second claim must be interpreted as alleging that Defendants' ROD is arbitrary and capricious because Defendants failed to consider an important aspect of the problem or offered an explanation that runs counter to the evidence before the agency. (Doc. 20 at 16–17.) However, as was discussed in relation to Plaintiffs' first claim, the Court finds that Plaintiffs have not shown that Defendants failed to consider an important aspect of the problem. Instead, the Court finds that Defendants have considered the effects that grazing sheep will have on increasing conflicts between grizzly bears and humans and determined that it is "discountable" and does not pose "an increased likelihood of death or injury." (Doc. 7-1 at 36.) Based on the above discussion, the Court also finds that Defendants considered the factors relevant to making the decision to graze sheep on Sheep Station lands and, after reviewing Plaintiffs' evidence and Defendants'

-15-

analysis of that evidence in the 2015 Biological Opinion and 2017 FEIS, finds a rational connection between the facts found and the conclusion made. Therefore, Plaintiffs are not entitled to judgment as a matter of law on their second claim for relief.

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 21) is DENIED.

IT IS FURTHER ORDERED that the Parties shall file a joint status report within 14 days advising the Court as to whether any issue remains for adjudication.

DATED this 30th day of May, 2019.

Dana L. Christensen, Chief Judge
United States District Court