**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Avenue North**
**Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4667**
**FAX: (406) 657-6058**
**Email: mark.smith3@usdoj.gov**

**ATTORNEY FOR DEFENDANT**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| **COTTONWOOD ENVIRONMENTAL LAW CENTER; GALLATIN WILDLIFE ASSOCIATION; YELLOWSTONE BUFFALO FOUNDATION,** | **CV 17-155-M-DLC** |
| **Plaintiffs,** | |
| **vs.** | **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL** |
| **U.S. SHEEP EXPERIMENT STATION; AGRICULTURAL RESEARCH SERVICE,** | |
| **Defendants.** | |

# TABLE OF CONTENTS

Table of Contents ......................................................................................... i

Table of Authorities ..................................................................................... ii

I.     Introduction. ........................................................................................1

II.    Standard for injunction pending appeal. ...........................................2

III.   Argument. ............................................................................................3

    A.  Plaintiffs do not show likely and imminent irreparable
       harm. ..............................................................................................3

       1. No "bureaucratic steamroller." ...............................................5

       2. No irreparable harm based on aesthetics or guard dogs. .....................6

       3. No irreparable harm based on Plaintiffs' conservation
          interest in grizzly bears. ........................................................9

       4. No irreparable harm to grizzly bears at species level. ........................12

    B.  Plaintiffs do not show likely success or serious questions
       on the merits. ...............................................................................14

       1.   The FEIS and the Biological Opinion properly
           disclosed the disputed bear encounters. ...........................15

       2.   Continued sheep grazing does not endanger human
           safety. ...............................................................................18

    C. Public interest and balance of equities weigh against an
       injunction. ....................................................................................19

CONCLUSION .............................................................................................22

CERTIFICATE OF COMPLIANCE .................................................................24

CERTIFICATE OF SERVICE .........................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................. 3, 4, 22

*All. for the Wild Rockies v. Kruger*,
   35 F. Supp. 3d 1259 (D. Mont. 2014)..................................................... 14, 16

*A.L.V.A. v. Weinberger*,
   765 F.2d 937 (9th Cir. 1985) ..........................................................................7

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987)...................................................................................4, 8

*Animal Prot. Inst. of Am. v. Hodel*,
   860 F.2d 920 (9th Cir. 1988) ..........................................................................7

*Ashley Creek Phosphate Co. v. Norton*,
   420 F.3d 934 (9th Cir. 2005) ........................................................................18

*Associated Gen. Contractors v. Coal. For Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ........................................................................4

*Bernhardt v. L.A. Cty.*,
   339 F.3d 920 (9th Cir. 2003) ................................................................. 20, 21

*Cong. v. United States Forest Serv.*,
   2018 WL 5629335 (E.D. Cal. Oct. 30, 2018)..................................................8

*Crow Indian Tribe v. United States*,
   343 F. Supp. 3d 999 (D. Mont. 2018).................................................. 9, 10, 11

*Desert Citizens Against Pollution v. Bisson*,
   231 F.3d 1172 (9th Cir. 2000) ........................................................................7

*Devose v. Herrington*,
   42 F.3d 470 (8th Cir. 1994) ..........................................................................12

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004) ........................................................4

*Humane Soc'y v. Gutierrez*,
   523 F.3d 990 (9th Cir. 2008) .........................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)......................................................................18

*Massachusetts v. Watt*,
   716 F.2d 946 (1st Cir. 1983)............................................................5

*Metro. Edison Co. v. People Against Nuclear Energy*,
   460 U.S. 766 (1983)........................................................................5

*Munaf v. Geren*,
   553 U.S. 674 (2008).........................................................................3

*Nat'l Wildlife Fed'n v. Burlington N. R.R.*,
   23 F.3d 1508 (9th Cir. 1994) .........................................................13

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   886 F.3d 803 (9th Cir. 2018) .........................................................12

*Nken v. Holder*,
   556 U.S. 418 (2009)................................................................ 14, 19

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
   810 F.3d 631 (9th Cir. 2015) .........................................................22

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S.
   Dep't of Agric.*,
   415 F.3d 1078 (9th Cir. 2005) ................................................. 18, 19

*Sierra Club v. Marsh*,
   872 F.2d 497 (1st Cir. 1989).........................................................5, 6

*Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
    472 F.3d 1097 (9th Cir. 2006) ........................................................................2

*Stewart v. I.N.S.*,
    762 F.2d 193 (2d Cir. 1985) ........................................................................12

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................ 2, 3, 4, 20

## Statutes

16 U.S.C. § 1531(b) ..........................................................................12
16 U.S.C. §1532(16) ........................................................................ 12
16 U.S.C. § 1533(a) ......................................................................... 12
16 U.S.C. §1536(b)(4) ..................................................................... 12
16 U.S.C. §1536(o)(2) ..................................................................... 12
16 U.S.C. §1539(a) ......................................................................... 12

## Rules

Federal Rule of Civil Procedure 62(d)....................................................2

# I.   Introduction.

Plaintiffs have moved for an injunction pending appeal of this Court's May 30, 2019 Order denying summary judgment against the U.S. Agricultural Research Service and Sheep Experiment Station ("Sheep Station").  But Plaintiffs fail to demonstrate why the Court should stay its Order of May 30, 2019 pending appeal. Plaintiffs rely on the same arguments this Court has already rejected – often simply repeating those arguments.  As set forth in greater detail below, Plaintiffs fail every element of the test for injunction pending appeal.

First, Plaintiffs fail to establish irreparable harm because sheep grazing on pasture is not irreparable.  Plaintiffs have no statutory right to aesthetics or recreation on Sheep Station lands, and Plaintiffs fail to establish that harm to those interests is likely or imminent.  There is also no irreparable harm to Plaintiffs' conservation interests because sheep grazing does not imperil grizzlies or block any connectivity corridor.  Finally, Plaintiffs do not state an ESA claim but even if they did, they fail to establish a definitive threat of future species-level harm.

Second, Plaintiffs are unlikely to succeed and raise no serious questions on the merits.  Plaintiffs continue to incorrectly assert that ARS failed to address grizzly bears chasing humans in the Big Mountain pasture.  But Plaintiffs' fact assertions about grizzly-human conflicts are unsubstantiated and incorrect.  The agency fully reviewed this issue in the EIS, ROD, and biological opinion, and a

Supplemental Information Report found that human grizzly bear encounters were properly disclosed in the NEPA documents.

Last, the balance of equities and public interest favor denial of an injunction pending appeal because the Sheep Station performs important and beneficial scientific research that is incompatible with public recreational uses, and Plaintiffs fail to show that Sheep Station grazing on ARS lands in the Centennial Mountains endangers humans or grizzlies. Accordingly, the Court should deny Plaintiffs' motion for injunction pending appeal.

## II. Standard for injunction pending appeal.

Federal Rule of Civil Procedure 62(d) allows a district court to "suspend, modify, restore, or grant an injunction . . . that secure[s] the opposing party's rights" during the pendency of an appeal. The preliminary injunction standard governs whether an injunction pending appeal is warranted. *Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). That standard requires a plaintiff to show: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Like a preliminary injunction, an injunction pending appeal "is an extraordinary remedy

never awarded as of right." *Id.* at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

The Ninth Circuit stated that an injunction pending appeal may be appropriate if an appellant raises "serious questions going to the merits . . . and the balance of hardships tips sharply in [appellant's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal citation omitted). However, the "serious questions" test is proper *only* when used within the *Winter* framework. 555 U.S. at 20.  Thus, "'serious questions going to the merits' and a hardship balance that tips sharply toward the [appellant] can support issuance of an injunction, assuming the other two elements of the *Winter* test [the likelihood of irreparable injury and the public interest] are also met." *All. for the Wild Rockies*, 632 F.3d at 1132.

Plaintiffs have not met their burden; nor have they demonstrated that this court clearly erred in its factual findings concerning harm, the public interest, and the balance of the equities. This Court should deny the request.

## III.   ARGUMENT.

### A.  Plaintiffs do not show likely and imminent irreparable harm.

"[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is

likely before the other requirements" will be considered.  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Plaintiff must do "more than merely allege imminent harm sufficient to establishing standing."  *Associated Gen. Contractors v. Coal. For Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).  Rather, plaintiff must show they will imminently suffer irreparable harm in the "absence of" the specific injunction they request.  *Winter*, 555 U.S. at 22.  Such harm must be "*likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131.

Here, Plaintiffs fail to clearly show that imminent irreparable harm is likely without an injunction prohibiting grazing in the West Summer Range.  Unlike environmental cases where proposed action results in effects that are permanent or of long duration (*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)), here the proposed grazing is short-term, in a small area, and rotated to ensure range health.  *See* Second Declaration of Dr. J. Bret Taylor, Doc. 25 at ¶ 5.  Thus, there is nothing about the nature of the proposed activity itself (grazing) that portends irreparable harm.  Plaintiffs theorize that grizzly bears may be imperiled because of the sheep grazing these high altitude pastures.  Doc. 37 at 10-13.  This claim is specifically refuted below, but moreover, Plaintiffs completely fail to show any grizzly mortality is "likely" or "imminent" as a result of sheep grazing.  Such an

outcome is highly unlikely, considering that no grizzlies have ever been killed in the entire 100-year history of Sheep Station grazing on these pastures.

As set forth below, in lieu of any evidence of likely and imminent irreparable harm, Plaintiffs' motion for injunction pending appeal must be denied.

### 1.     No "bureaucratic steamroller."

Plaintiffs ask the court to adopt the "bureaucratic steamroller" theory of irreparable harm.  *See* Doc. 37 at 7-9, quoting at length from *Sierra Club v. Marsh*, 872 F.2d 497, 500 (1st Cir. 1989).  In *Marsh*, the First Circuit held that "when a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered."  *Id.* at 500 (quoting *Massachusetts v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983)).  The "bureaucratic steamroller" is shorthand for the idea that such an ill-informed decision gets progressively harder to reverse the further it advances through the administrative process.  *Id.*

But such procedural harm cannot, in itself, constitute "irreparable harm" sufficient to sustain a preliminary injunction:

> To repeat, the harm at stake in a NEPA violation is **a harm to the environment**, not merely to a legalistic "procedure," nor, for that matter, merely to psychological well-being. *Cf. Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 774 [ ] (1983) (harms under NEPA must involve "a change in the physical environment"). … the risk implied by

a violation of NEPA is that <u>real environmental harm will occur</u> through inadequate foresight and deliberation.

*Marsh*, 872 F.2d at 504 (bold added, underlines in original).

Here, the "bureaucratic steamroller" concept is doubly inapt: First, as detailed more fully below (§III(B)(1)), Plaintiffs fail to establish any deficiency in ARS's NEPA decision-making process.  The sole claimed deficiency (purported failure to disclose certain human-grizzly interactions) is baseless: The bear encounters *were* addressed in the NEPA documents and documents referenced and incorporated therein.  Second, Plaintiffs fail to explain how the agency's commitment to a course of action represents any irreparable harm to the environment.  As set forth below (§III(A)(2-3)), it portends no such harm: Sheep grazing does not imperil grizzly bears or otherwise cause any irreparable environmental harm.  Thus, there is no "bureaucratic steamroller."

### 2.    No irreparable harm based on aesthetics or guard dogs.

Plaintiffs say sheep grazing would cause irreparable harm to their "aesthetic, safety, and recreational interests" because ARS's actions "prevent the plaintiffs from using public land."  Doc. 37 at 9.  Plaintiffs argue they "cannot enjoy the trail and look for wildlife if they are worried about being chased by grizzly bears."  *Id.* Plaintiffs complain they "cannot hike with their dogs on the Continental Divide Trail for fear they will be bit by aggressive sheep guard dogs."  *Id.* at 9-10.

The first problem with this claim is that the Sheep Station pastures are not "public land."  Plaintiffs and the public do not have any statutory right to use Sheep Station lands.  Plaintiffs cannot invoke the National Forest Management Act or the Federal Lands Policy Management Act or any other similar statute addressing public use of public lands.  Plaintiffs have limited access to use one discrete portion of the high altitude Sheep Station pastures – the Continental Divide Trail – under an interagency agreement.  Doc. 8, ¶27.  While FLPMA and similar statutes impose land-management requirements on public land for benefit of the public (*see, e.g.*, *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1179 (9th Cir. 2000)), the interagency agreement contains no such requirements.  That agreement therefore does not confer any public "rights" to aesthetic or recreational enjoyment akin to the above-referenced statutes.

For example, Plaintiffs incorrectly presume they are entitled to experience the Continental Divide Trail without the aesthetic burden of having to look at sheep.  But – even if we assume such an injury to be permanent (it is not) – Plaintiffs cannot assert any such injury on lands that are not open to the public.  *See Animal Prot. Inst. of Am. v. Hodel*, 860 F.2d 920, 923 (9th Cir. 1988); *A.L.V.A. v. Weinberger*, 765 F.2d 937, 938 (9th Cir. 1985) (no injury to the association's members from the Navy's shooting of wild goats on land not open to the public).

7

Moreover, neither the Trail nor Plaintiffs' access to it is imperiled by the proposed action.  There is no allegation or evidence sheep interfere with hikers on the Trail.  Sheep grazing itself causes marginally shorter grass and forbs, which grow back in days or weeks.  This is neither "permanent" nor "of long duration," and so it cannot be "irreparable" harm.  *Amoco Prod.*, 480 U.S. at 545.  Because sheep grazing does not actually prevent Plaintiffs from using the Continental Divide trail, they cannot establish irreparable harm.  *Cong. v. United States Forest Serv.*, 2018 WL 5629335, at *5 (E.D. Cal. Oct. 30, 2018).

Plaintiffs also fail to establish that any aesthetic harm or peril from guard dogs is "likely."  Plaintiffs' declarants (Gutkoski and Hockett) do not establish that sheep will be grazing in view of the Continental Divide Trail when they plan to visit.  *See* Doc. 37 at 10.  Sheep and aggressive sheep dogs are only in the vicinity of the Continental Divide Trail about 6 to 12 days per year.  Doc. 25, ¶ 10. Plaintiffs' declarants do not specify when they will hike the Trail, or that their transect is likely to coincide with the six to 12-days when sheep are near the Trail. The Trail contours generally along the southern edge of the Sheep Station pastures. Doc. 25, ¶ 8; Doc. 25-3; Doc. 25-4.  Plaintiffs do not show it is likely sheep will even be visible from the trail – they could be miles to the north and invisible to Trail users.  Thus, Plaintiffs fail to show any purported "aesthetic" injury or danger from guard dogs is likely.

8

### 3.     No irreparable harm based on Plaintiffs' conservation interest in grizzly bears.

Plaintiffs claim grizzlies will be harmed because an alleged connectivity corridor between the Greater Yellowstone Ecosystem and the Bitterroot ecosystem will be adversely affected.  Doc. 37 at 10.  But Plaintiffs have never refuted the United States' evidence that no such corridor exists: No grizzlies presently occupy the Bitterroot ecosystem, and none have existed there since before the grizzly was listed under the ESA.  Doc. 24 at 5-6.  The best scientific evidence indicates the Centennials represent the western edge of the Greater Yellowstone Ecosystem because "open sagebrush habitat with more roads and human activity to the west… likely is less suitable habitat for grizzly bears." Doc. 7-1 at PDF 28, citing Bjornlie et al. 2013.  No grizzly bears have been observed west of I-15 "in modern times." Doc. 4-13.

Moreover, because there are no grizzlies in the Bitterroot ecosystem, a connectivity corridor to that area would provide no genetic diversity.  In *Crow Indian*, this Court held that lack of connectivity between Greater Yellowstone Ecosystems and "other continental populations… was recognized as threat at the time of the original listing" because genetic isolation was antithetical to long- term viability.  *Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999, 1018-19 (D. Mont. 2018).  Blockage of a purported corridor that does not connect with another

9

population of grizzly bears imparts no such threat – and therefore cannot constitute irreparable harm.

Even if there were a corridor that led to a population of grizzlies in the Bitterroot ecosystem, the presence of sheep grazing in a pasture is not a barrier to migrating grizzly bears. "Sheep grazing and associated activities in the Centennial Range are 'permeable', meaning that they do not form a physical or permanent barrier to carnivore travel and occupancy." Doc. 7-2 at PDF 408. "Documented telemetry locations of collared grizzly bears indicate that they move through and around the project area, including when sheep and herders are present on the Summer Range []." Doc. 7-1 at PDF 35.

Under any alternative (including "no action" and "no grazing"), "[c]arnivore use of the Centennial Mountain range would continue similar to the current condition." In other words, carnivore movements will be the same whether or not sheep are grazing in these pastures. Doc. 7-2 at PDF 92. "Sheep Station activities have a minimal effect to wide ranging carnivore use of the habitat." *Id.* As noted by the Fish & Wildlife Service, grizzly bear populations and ranges have expanded in the Centennial Mountains "concurrent with the Sheep Station implementing the same action described in the proposed action…. This means that historical activities comparable to the proposed action have had little to no discernable effect on the population's trend toward recovery." Doc. 7-1 at PDF 21 (underlines

added).  Stated differently, sheep grazing on these pastures has not historically inhibited grizzly movements or negatively impacted the species, but rather has been compatible with an *increasing* and more widely-distributed grizzly bear population.

The Summer East and West pastures combined comprise only 16,600 acres. Doc. 7-2 at PDF 97.  Sheep are kept together, under the protection of guard dogs and shepherds, so any grizzlies they encounter can be hazed away without lethal intervention.  *Id.* at PDF 57.  Sheep bands "occupy only two pastures at any given time, are moved rapidly through the area, and are temporary, using the Centennial Range only for a portion of the summer."  Doc. 7-2 at PDF 408.  At night, the sheep occupy only one acre of the pastures.  *Id.*  "Less than 1% of the Centennials is likely to be used by the Sheep Station at any given time."  Doc. 7-1 at PDF 35, Taylor Dec. ¶ 3.  Thus, even if the Centennials were a migratory corridor to the Bitterroot ecosystem (they are not), and even if Sheep Station sheep were an impermeable barrier to migrating grizzlies (they are not), grizzly bears would still have 99% of their migratory corridor available to travel west.  Plaintiffs fail to establish likely irreparable harm from a loss of connectivity.

**4.      No irreparable harm to grizzly bears at species level.**

Plaintiffs fail to show imminent irreparable harm to grizzlies is likely at the species level.[1]  Listed "species" are protected under the ESA, and the ESA explicitly permits the taking of individual members of a species in some circumstances.  16 U.S.C. §§ 1531(b), 1532(16), 1533(a), 1536(b)(4), 1536(o)(2), 1539(a), (b).  Therefore, irreparable harm to listed species is based on harm at the species level, not on individual takes.  *See Humane Soc'y v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008) (finding death of over 2,000 listed salmon would not constitute irreparable harm).

Plaintiffs argue the death of a single specimen is irreparable harm, citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 818 (9th Cir. 2018).  The court in *Nat'l Wildlife*, however, was addressing whether an applicant for preliminary injunction needed to demonstrate "extinction-level threats" to species.  *Id.*  The court found such an extinction-level threat was "not required before an injunction can issue under the ESA," but that "what we require is a definitive threat of future harm to protected species, not mere speculation."  *Id.* at

---

[1] Even if Plaintiffs did show harm at the species level, they have not alleged any ESA violations in this case.  A party seeking injunctive relief must "establish a relationship between the injury claimed in the party's [application for relief] and the conduct asserted in the complaint."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam); *Stewart v. I.N.S.*, 762 F.2d 193, 199 (2d Cir. 1985). Plaintiff's amended complaint contains no ESA allegations, so they cannot anchor their claim for temporary relief in the ESA.  *Id.*

819, citing *Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994) (underlines added).  Thus, the death of a single specimen with no definitive threat of future harm to the species is not irreparable harm.  Notably, the *Burlington Northern* case is on all fours with this case: There, the Ninth Circuit affirmed the district court's denial of injunctive relief based on the absence of evidence of future deaths of members of a protected species, namely grizzly bears. 23 F.3d at 1512.  Here too, Plaintiffs offer no evidence – let alone definitive evidence – that sheep grazing on ARS pastures will cause future deaths of grizzly bears.

Indeed, the evidence tends to prove the opposite.  As noted above, the FEIS and Biological Opinion refute Plaintiffs' claims that grazing blocks a connectivity corridor, and further demonstrate that grizzly bear populations in the Centennial Mountains have increased during Sheep Station grazing.  Predator avoidance requirements (Doc. 7-2 at PDF 56-58) are designed to prevent grizzly mortalities, and have proven effective.  There have been "no verified grizzly bear / sheep conflicts on the Sheep Station" and there have been no "grizzly bear control actions" during the more than 100 years the Sheep Station has been operational. Doc. 7-1 at PDF 31.

The single most important prerequisite for an injunction is irreparable harm.  Plaintiffs fail to establish irreparable harm is imminent or likely, so their motion should be denied.

**B. Plaintiffs do not show likely success or serious questions on the merits.**

The Court should deny Plaintiffs' motion because Plaintiffs cannot satisfy the "critical" factor that they be likely to succeed on the merits.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  This Court has already determined that Plaintiffs do not succeed on the merits.  *See* Doc. 33.  This Court held, without reservations, that ARS fully complied with its legal obligations under NEPA when it approved ongoing grazing on Summer West pasture.  *Id.*  As such, this case is not a candidate for injunction pending appeal:

> The very existence of Federal Rule 62(c), to which courts have consistently applied the same standard as preliminary injunctions — including the need to show "serious questions" or likelihood of success on the merits — indicates that **a middle ground exists in instances where a district court rules in favor of the defendants, yet acknowledges the fact that its ruling was a close call, or that the law upon which its ruling rests is unsettled or opaque**.  It is in those instances where an injunction pending appeal is appropriate; if the Court adopted a broader application of Rule 62(c), the exception would swallow the rule and injunctions would be issued as a matter of course.

*All. for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1270 (D. Mont. 2014) (bold added).  Here, the Court's order identified no close calls or unsettled / opaque areas of law.  As such, an injunction pending appeal is not appropriate.

14

Plaintiffs say they are likely to succeed, but in support they repeat the same arguments they unsuccessfully asserted on summary judgment. They point out no error in the Court's summary judgment decision – they merely disagree with it. Doc. 37 at 5 ("Cottonwood respectfully disagrees."). Plaintiffs' assertion that ARS inadequately disclosed certain alleged encounters between grizzly bears and sheepherders (Doc. 32 at 12-13) is basically a retread of the same argument they advanced at summary judgment (Doc. 22 at 8-10). The claim fails here for the same reason it failed at summary judgment: The bear encounters *were* disclosed in the FEIS and Biological Opinion, and that discussion satisfied NEPA. *See* Doc. 32 at 9-12 ("The Court does not find the FEIS's discussion of the incidents to be lacking."). Moreover, as shown by a Supplemental Information Report, the FEIS, ROD, and Biological Opinion considered all the relevant factors and reasonably determined sheep grazing does not pose an increased likelihood of conflicts between humans and grizzly bears.

## 1. The FEIS and the Biological Opinion properly disclosed the disputed bear encounters.

ARS did not omit or conceal any information regarding bear encounters during the NEPA process. Plaintiffs' claim to the contrary is based on two facts that Plaintiffs incorrectly attribute to the 2008 encounter in the Big Mountain pasture: (1) The bear was defending a carcass; and (2) The aggressor bear was a grizzly. Plaintiffs rely on a secondhand account of the bear encounter by Animal

15

and Plant Health Inspection Service (APHIS) officer Jonathan Farr, compiled years after the fact based on terse entries in a date book. Doc. 4-5. Nothing in the date book or associated report indicates that the chase was caused by a carcass, let alone a dead sheep. *Id.* The cryptic date book entry simply says "chased by g. bear." *Id.* at PDF 2-3. While the initial report suggested the incident involved a grizzly bear, Farr's follow-up revealed signs of both grizzlies and black bears in the area. *Id.*

Plaintiffs contend the episode clearly involved a grizzly bear because "[t]wo or more Sheep Station employees reported" the incident. Doc. 37 at 5. But the number of personnel reporting the incident is irrelevant (one may have simply been translating for the Peruvian herder). Nothing suggests more than one person witnessed the encounter. To the contrary, Farr's March 15, 2010 email indicates the same sheepherder (singular) that was chased on July 28 encountered a bear on August 1, 2008. Doc. 4-5 at 2. Plaintiffs say Sheep Station personnel receive training twice per year on identifying grizzly bears. Doc. 37 at 5. Yet Plaintiffs source for this provision (Doc. 7-2 at 52) is a July 2017 FEIS – a document created nine years *after* the encounter in the Big Mountain Pasture. Plaintiffs lack any basis to assert the sheepherder actually chased in 2008 had received any training in bear identification. Finally, Plaintiffs argue the Biological Opinion "unequivocally states" the herder encountered a "grizzly." Doc. 37 at 5, citing 7-1 at 26. But the referenced page of the Biological Opinion actually just recaps Farr's report:

> On July 28, 2008, Sheep Station employees reported encountering
> a grizzly bear in the Big Mountain pasture of the West Summer
> Range, however APHIS Wildlife Services found both grizzly bear
> and black bear in the vicinity.

Contrary to Plaintiffs' claim, this is hardly an "unequivocal" determination that the episode involved a grizzly bear.

Plaintiffs next argue the Court and the Fish & Wildlife Service got it wrong when they determined the "descriptions of the [Big Mountain] incidents 'were representative of natural bear behaviors and do not represent a loss of wariness to humans.'" Doc. 37 at 6. But Plaintiffs provide no discernable basis for this assertion other than the fact that the Big Mountain encounters occurred – in effect they assert that *any* bear-human contact represents habituation and a loss of wariness. Plaintiffs lack any scientific basis for this assertion, and it defies logic. The bear involved in the Big Mountain encounter obviously broke off the chase (the sheepherder was not attacked) and did not pursue the herd when it was relocated to a different pasture. Doc. 7-1 at PDF 31. This is consistent with a natural wariness and avoidance of humans.

Plaintiffs' latest injunction brief adds nothing new to improve the merits of their claim. They continue to rely on the flawed premise that "sheepherders have been chased by grizzly bears that were protecting sheep carcasses." This mischaracterizes the 2008 Big Mountain encounter, and invalidates Plaintiffs' NEPA claim. Plaintiffs are unlikely to succeed.

17

### 2.   Continued sheep grazing does not endanger human safety.

Cottonwood also revisits its summary judgment argument (Doc. 22 at 9) that the FEIS did not "analyze the potential safety impacts of grizzly bears chasing hikers on the Continental Divide Trail." Doc. 37 at 6. Plaintiffs claim that because "Defendants did not respond," they have established a fair chance of success on the merits. *Id.* at 10.

As an initial matter, "human safety" is not a component of Plaintiffs' merits claims in the amended complaint. *See generally* Doc. 20. Plaintiffs also lack prudential standing to pursue such claims under NEPA and the APA: NEPA exists to protect the environment, not human safety. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005), as amended (Aug. 17, 2005). Accordingly, Plaintiffs cannot use the APA to pursue a human safety claim under NEPA. *Id.*

Moreover, contrary to Plaintiffs' assertion, federal defendants *did* respond to the "human safety" claim. *See* Doc. 24 at 19-21. The government pointed out that Plaintiffs' human safety arguments were "predicated on the fiction that grizzlies are somehow more dangerous to humans in the Summer West and Summer East Pastures because of the presence of sheep." *Id.* In contrast to Plaintiffs'

unsupported assertion that grazing somehow makes bears more dangerous to humans, ARS has more than 100 years of history during which no humans have been attacked by grizzlies on these pastures. *Id.* As noted above, the claim of a sheepherder being "chased" by a grizzly bear in the Big Mountain pasture is dubious at best: That encounter was more than eleven years ago (*see* Doc. 4-5), might have involved a black bear, no humans were harmed, and the issue was resolved by moving the sheep to another part of the pasture. Doc. 7-1 at PDF 31. There is no evidence the bear killed a sheep or was defending a carcass. Doc. 4-5 at 6. Because the alleged chase was not related to the sheep, eliminating grazing would not mitigate the supposed risk to humans.

The Court considered these arguments and ruled that "Defendants have considered the effects that grazing sheep will have on increasing conflicts between grizzly bears and humans and determined that it is 'discountable' and does not pose 'an increased likelihood of death or injury.'" Doc 32 at 15 (citing Doc. 7-1 at 36). Thus, Plaintiffs are unlikely to succeed on their claims regarding human safety.

### C. Public interest and balance of equities weigh against an injunction.

Analysis of the "balance of equities" and "public interest" merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The "balance of equities" refers to the relative burdens or hardships to the plaintiffs

versus other parties depending on if an injunction is issued.  *Winter*, 555 U.S. at

24-31.  The public interest inquiry primarily addresses impact on non-parties.

*Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931 (9th Cir. 2003).

The equities and public interest do not favor an injunction here.  Plaintiffs

cannot point to any legitimate public benefit that would be achieved by an

injunction.  Instead, Plaintiffs argue an injunction is in the public interest because

various state and federal officers or agencies, and the Obama and Trump

Administrations, purportedly wanted to end grazing.  Doc. 37 at 14-15.  But these

individuals and organizations may profess such views based on any number of

motivations, including budgetary constraints, political expediency, or personal

disdain for domestic grazing.  The balance of equities / public interest inquiry is

not a popularity contest.

Plaintiffs fail to demonstrate any of these individuals or organizations

possessed the facts as established through this litigation: There is no connectivity

corridor going through these pastures and, even if there were, grazing does not

block migrating grizzlies even on the tiny fraction of the corridor (1%) the sheep

graze intermittently for part of the summer.  *See supra*, §III(A)(3).  Indeed,

virtually all of the communications Plaintiffs' cite pre-date by several years the

definitive assessment by the undisputed expert agency, i.e., the Fish & Wildlife

Service's 2015 Biological Opinion.  *See, e.g.*, Doc. 4-6 (2012 Scott letter), Doc. 4-

8 (2009 Schwartz email), Doc. 4-13 (2008 notes), & Doc. 26-1 (2010 Bozorth letter).

Similarly, Plaintiffs fail to establish that any of these critics were aware of the benefits imparted by ARS research at the Sheep Station.  As already extensively briefed, the Station studies how to improve rangeland ecosystems (like fire resistance, vegetative diversity, and habitat) and the health and quality of domestic livestock.  Doc. 8 at ¶¶ 4, 8, 9, 21, 22, 24, 25, 32.  This benefits the public, the environment, and thousands of ranchers and consumers.  *Id.*  The Station also studies how to mitigate disease transmission between domestic livestock and wildlife, and how to mitigate negative habitat effects, which benefits wildlife like bighorn sheep and sage grouse everywhere they exist near domestic pastures.  *Id.* at ¶¶ 2, 4, 31.  Contrary to Plaintiffs' claim, termination of grazing is a big deal: If grazing is not allowed to resume, the scientific integrity of experiments that have been running for 60 and 100 years may be lost.  Doc. 8 at 14.

In short, Plaintiffs cannot establish a balance of equities or public interest favoring an injunction by alluding to outmoded opinions by third parties that lacked all the facts.  Especially where the conclusions proffered by those parties contradict the determinations of the expert agency that *did* possess all the facts:

The 2015 Biological Opinion found ongoing grazing posed "no jeopardy" to grizzly bears.[2]  Doc. 7-1 at 1.

Where (as here) an applicant seeking preliminary injunction utilizes the lesser "serious questions" on the merits standard, their burden of proof increases on the balance of equities prong, i.e., they must prove a "balance of hardships that tips sharply towards the plaintiff." *All. for the Wild Rockies*, 632 F.3d at 1135. Plaintiffs' arguments here fall well short of such a showing.  Indeed, as outlined above, the concrete benefits from the Station clearly outweigh Plaintiffs' baseless (and debunked) theory that sheep grazing may harm grizzlies or endanger humans.

## CONCLUSION

Plaintiffs have not justified the extraordinary remedy of an injunction pending appeal.  Plaintiffs have not established irreparable harm.  Plaintiffs have not shown any errors in the Court's decision and have not raised serious questions on the merits of their NEPA claims.  Finally, the balance of equities and public

---

[2] The Court should disregard Plaintiffs' arguments concerning bighorn sheep. Doc. 37 at 16.  Generally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint[,]" and if a plaintiff seeks injunctive relief based on claims that were not raised in the complaint, the court does not have authority to issue an injunction. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).  Here, Plaintiffs' amended complaint and summary judgment brief raised no claims based on bighorn sheep.

interest weigh heavily against an injunction, because decades of valuable research outweigh illusory hazards to grizzly bears and humans.

The Court should deny Plaintiffs' motion.

Respectfully submitted this 28th day of June, 2019

KURT G. ALME
United States Attorney

/s/ Mark Steger Smith
MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building
2601 Second Ave. North, Suite 3200
Billings, MT 59101
(406) 247-4667 (tel)
(406) 657-6058 (fax)

*Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. 7.1(d)(2), I certify that the attached brief is double-spaced, has a proportionally-spaced typeface of 14 points, and contains 5,263 words of text, exclusive of tables and headings.

KURT G. ALME
United States Attorney

/s/ Mark Steger Smith
MARK STEGER SMITH
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that on June 28th, 2019, I electronically filed the foregoing with the

Clerk of the U.S. District Court of Montana using the CM/ECF system, which will

send a Notice of Electronic filing to the counsel of record.

KURT G. ALME
United States Attorney

/s/ Mark Steger Smith
MARK STEGER SMITH
Assistant U.S. Attorney