IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
JUL 22 2019
Clerk, U.S. Courts
District Of Montana
Missoula Division

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, GALLATIN WILDLIFE ASSOCIATION, YELLOWSTONE BUFFALO FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. SHEEP EXPERIMENT STATION; AGRICULTURAL RESEARCH SERVICE,<br><br>Defendants. | CV 17–155–M–DLC<br><br>ORDER |

Before the Court is Plaintiffs' Motion for Injunction Pending Appeal (Doc. 36) of the Court's May 30, 2019 order denying Plaintiffs' motion for permanent injunction and summary judgment (Doc. 32) regarding Defendants' decision to graze sheep in the Centennial Mountains. Plaintiffs file this motion because grazing is scheduled to start this month and the appeal may not be resolved for some time.

By definition of the relief sought here, this is not the first instance when the Court has heard and weighed Plaintiffs' arguments against grazing sheep on the

-1-

lands owned by Defendants. Nor is the Court's experience limited to just the briefing for summary judgment. Rather, this is the third round of motions and briefing on the propriety of grazing sheep in the Centennial Mountains in the third lawsuit filed by Plaintiffs on the matter. Accordingly, the Court will not revisit the facts of the case but proceed directly to its analysis.

## LEGAL STANDARD

Injunctions are extraordinary remedies, "never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). Federal Rule of Civil Procedure 62(d) authorizes this Court to "suspend, modify, restore, or grant an injunction" while an appeal "is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction." A party seeking such an injunction must show: (1) it is likely to suffer irreparable harm absent the injunction; (2) that it is likely to succeed on the merits; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. The party must show more than the possibility of irreparable harm, it must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original). Once shown, the other factors are assessed on a sliding scale. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). For instance, if, after demonstrating that irreparable harm is likely, the party also

makes a strong showing on the public interest and equities prongs, then an injunction may issue so long as "serious questions going to the merits" have been raised. *Id.* In such cases, the party is thus relieved of the requirement that it demonstrate that it is likely to succeed on the merits, and may succeed on the lesser "serious questions" standard. *Id.* When the federal government is a party, the balance of equities and public interest factors may be merged. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

## DISCUSSION

Plaintiffs must satisfy all four *Winter* prongs in order to secure an injunction. *Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Because their showing on the likelihood of irreparable harm could influence the required showing on the remaining factors, the Court begins its analysis there.

### I. Likelihood of Irreparable Harm

Plaintiffs present several arguments to show that they are likely to suffer irreparable harm absent an injunction. First, Plaintiffs urge the Court to adopt the "bureaucratic steam roller" theory of irreparable harm first coined in *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989). This theory recognizes that the purpose of NEPA is to present "governmental decision-makers with relevant environmental data *before* they commit themselves to a course of action." *Id.* at 500 (quoting *Commonwealth of Massachusetts v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983))

(emphasis in original). Accordingly, when a decision implicating NEPA is made "without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." *Id.* (quoting *Watt*, 716 F.2d at 952) (emphasis omitted). However, the harm should not be defined as merely procedural harm to the NEPA process, rather, the harm is "to the *environment*," and "consists of the added *risk* to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with prior public comment) of the likely effects of their decision upon the environment." *Id.* (emphasis in original). The image of the bureaucratic steamroller is evoked by the reality of the situation where resources are committed by implementing a decision while litigation concerning that decision continues on appeal—in such a case, "new information . . . may bring about a *new* decision, but it is that much less likely to bring about a *different* one" because the bureaucratic mind is "already made up." *Id.* (quoting *Watt*, 716 F.2d at 952) (emphasis in original).

The Court is not satisfied that the "bureaucratic steamroller" theory is applicable in this case. To apply that theory of irreparable harm, the Court would need to be satisfied that there is, at least, a serious question regarding whether the requirements of NEPA were met. In other words, the Court must be satisfied that the bureaucratic steamroller is likely to cause the harm the theory contemplates—

risk to the environment through implementation of a decision and commitment of resources despite incomplete information. Where, as here, the Court has found that NEPA was complied with because the information emphasized by Plaintiffs *was* considered in the decision-making process, the Court cannot find that the harm contemplated by the bureaucratic steamroller theory is likely. Additionally, as Plaintiffs note, the Ninth Circuit has not "directly addressed" the viability of this theory. (Doc. 37 at 13.)

Second, Plaintiffs claim that Defendants' actions are causing irreparable harm to Plaintiffs by preventing them from "using public land." (*Id.* at 13.) In support, Plaintiffs assert that they "cannot enjoy the Continental Divide Trail" for fear of being chased by grizzly bears and "cannot hike with their dogs on the Continental Divide Trail for fear they will be bit by aggressive sheep guard dogs." (*Id.* at 13–14.) The Court does not find that these complaints establish a likelihood of irreparable harm because Plaintiffs have wholly failed to provide any evidence which would indicate that these scenarios are likely.

Lastly, Plaintiffs claim that Defendants' decision to graze sheep will cause "irreparable harm to [Plaintiffs'] interests in making the area secure for dispersing grizzly bears." (*Id.* at 16.) In support, Plaintiffs quote portions of Defendants' Biological Opinion stating that grizzly bears are likely to prey on sheep independent of the availability of natural foods and that most situations where

bears are exposed to sheep result in conflict. (*Id.* (quoting Doc. 7-1 at 37).) The Court will not rely on Plaintiffs' selective quotation from Defendants' Biological Opinion to establish that irreparable harm is likely. The ultimate conclusion in the Biological Opinion is clear, which is that the effects of grazing sheep are "discountable and no adverse effects to grizzly bears would be likely from implementing . . . the proposed action." (Doc. 7-1 at 41.) To conclude that Plaintiffs' selective quotations show that irreparable harm is likely would be to substitute Plaintiffs' interpretation of the evidence for Defendant's expert opinions regarding the implications of that evidence.[1]

## II. Success on the Merits

Because Plaintiffs failed to successfully show a likelihood of irreparable harm, the Court evaluates the second prong of the *Winter* test using the higher, "success on the merits" standard. *See Humane Society of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008) ("[T]he issues of likelihood of success and irreparable injury represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."). In denying Plaintiffs' summary judgment motion, the Court has already concluded

---

[1] Plaintiffs' also claim that the action will likely cause irreparable harm to the specific bears that pass through the Centennial Mountains. (Doc. 37 at 16–17.) Plaintiffs provide no additional evidence to support their assertion that harm is likely to these specific bears. As this argument is unsupported, the Court will not address it further.

that Plaintiffs do not succeed on the merits of their arguments. Plaintiffs do not offer new argument here. Rather, they "respectfully disagree[ ]" with the Court's analysis and reiterate their arguments in support of summary judgment. (Doc. 37 at 9.) Plaintiffs hold fast to their assumption that the incidents detailed in their FOIA requests definitively involved grizzly bears and were inadequately disclosed or addressed by Defendants. However, as detailed in the Court's order on summary judgment, that assumption lacks merit, the incidents were adequately disclosed, and Plaintiffs' concerns were appropriately addressed. (Doc. 32 at 10–16.) Having determined that these arguments did not have merit, the Court cannot now find that they are likely to succeed.[2]

### III. Public Interest and Balance of Equities

Lastly, the Court merges the public interest and balance of equities factors to reflect that the federal government is defending this case. *Jewell*, 747 F.3d at 1092. On these combined factors, Plaintiffs assert that "[h]uman safety always sharply outweighs livestock grazing." (Doc. 37 at 18.) While the Court agrees that this is likely true, there is no indication that sheep grazing increases the threat grizzly bears pose to human safety. Plaintiffs again rely on assumptions that the

---

[2] Although the Court employs the higher "success on the merits" showing here, which is a result of Plaintiffs' failure to show that irreparable harm is likely, it is worth noting that the Court also does not find that Plaintiffs raised serious questions going to the merits. The Court did not identify any close calls during summary judgment and Plaintiffs' recitation of those arguments here is insufficient to raise serious questions regarding the merits of their claims.

Court does not share—that the incidents described in their FOIA request definitively involved grizzly bears and, further, indicate that grazing sheep increases the risk that hikers on the Continental Divide Trail will be chased or mauled by grizzly bears. As noted in the Biological Opinion, there had been no "verified grizzly bear/sheep conflicts" within the ten years preceding the issuance of the Biological Opinion and, further, no grizzly bears have attacked herders on Sheep Station lands throughout its history. (Doc. 7-1 at 31, 36.) Based upon this history, the Court does not find that the unverified accounts of grizzly bears chasing sheep herders as emphasized by Plaintiffs establish that grazing sheep will increase the threat grizzly bears pose to hikers on the Continental Divide Trail to the extent that it can be said that the public interest tips sharply in support of enjoining the grazing.

Plaintiffs also point to the purported opinions and efforts of various governmental agencies and officers to establish that grazing sheep is unpopular and insignificant. As noted by Defendants, these opinions and efforts could be driven by a myriad of motivations, are "outmoded," and made by "third parties that lacked all the facts." (Doc. 39 at 25–26.) The Court agrees. Plaintiffs' reliance on these statements fails to provide the sharp tilt in favor of an injunction that they require.

Plaintiffs having failed to make the requisite showing on all four prongs of the *Winter* test,

IT IS ORDERED that Plaintiff's Motion for Injunction Pending Appeal (Doc. 36) is DENIED.

DATED this 22nd day of July, 2019.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court